PACIFIC CREOSOTING CO. v. THAMES & MERSEY MARINE INS. CO., Limited.

(District Court, W. D. Washington, N. D.    January 16, 1911.)

No. 4,354.

1. INSURANCE (§ 478*)—MARINE INSURANCE—"FREE FROM PARTICULAR AVERAGE"—"PARTICULAR AVERAGE."

A clause in a marine policy, "Warranted free from particular average, unless the vessel or craft or the interest insured be stranded, sunk, or on fire," means that the insurer does not assume liability for a partial loss, in the absence of occurrence of the casualties specified.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1230–1238; Dec. Dig. § 478.*

For other definitions, see Words and Phrases, vol. 6, p. 5186.]

2. INSURANCE (§ 478*)—MARINE INSURANCE—PARTICULAR AVERAGE CLAUSE—"ON FIRE"—"BURNT."

A marine policy contained a clause, "Warranted free from particular average, unless the vessel or craft or the interest insured be stranded, sunk, or on fire." The libel alleged that on November 18th, while the ship was lying in port and before discharge, a fire broke out in the after 'tween-decks of the ship and burned the bulkhead forward of the lazarette, the door thereof, and a considerable portion of dunnage and other parts of the ship. An exhibit, quoting from the ship's protest, recited that the master, on the alarm being given, went below through the lazarette and saw the reflection of the fire over the top of the bulkhead between the after 'tween-decks and the lazarette, which were then full of cargo, and that after considerable trouble the fire was extinguished, with considerable damage. *Held*, that the words "on fire," as used in the particular average clause, were not synonymous with the word "burnt," contained in former policies, but were indicative of a happening whereby the ship was endangered by actual fire burning some part of it, necessitating extraordinary efforts to prevent serious damage, and that under such definition the libel was not subject to exception as stating a loss from which the insurer was exempted by the particular average clause as matter of law.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1230–1238; Dec. Dig. § 478.*]

In Admiralty. Libel in personam by the Pacific Creosoting Company against the Thames & Mersey Marine Insurance Company, Limited. On exceptions to the libel. Overruled.

Bogle, Merritt & Bogle, for libelant.
Brady & Rummens, for claimant.

HANFORD, District Judge. This suit is founded on a marine policy insuring a cargo of iron drums containing creosote oil shipped from London, England, to Eagle Harbor, in Puget Sound, by the British ship Sardhana. In storms encountered during the voyage the cargo was battered and damaged, and after the arrival at her port of. discharge a gale of wind caused a barge used for lightering the cargo from the ship to land, having a load of 272 drums, to be capsized, and by that casualty four drums were lost and a large salvage expense was incurred. The losses from the causes indicated amount in the aggregate to more than 20 per cent. of the total value of the cargo, and by a marine survey and report of average adjusters the respondent's liability was fixed at $1,197.20, which is the amount of insurance on that part of the cargo lost, added to expenses incurred under the sue and labor clause of the policy.

The respondent claims exemption from liability on a condition of the contract known in the insurance business as the "F. P. A. clause," which reads as follows:

"Warranted free from particular average, unless the vessel or craft or the interest insured be stranded, sunk, or on fire. * * *"

In marine insurance law the phrase "Warranted free from particular average" means that the insurer does not assume liability for a partial loss, and the controverted question in this case is whether the conditional liability in this case became absolute by reason of a fire in the ship after her arrival at her port of discharge. In the libel it is averred that:

" * * * On November 18th, while lying in said port of Eagle Harbor, and before discharging said cargo, a fire broke out in the after 'tween-decks of said ship, and burned the bulkhead forward of the lazarette, the door thereof, and a considerable portion of dunnage and other parts of said ship. * * *"

And in an exhibit attached to the libel there is quoted from the ship's protest a statement concerning the fire as follows:

"November 18th. Stevedores continued to discharge the cargo and at 5 p. m. finished for the day. 291 further drums were discharged. About 9:30 p. m. smoke was discovered issuing from the after hatch, by one of the crew, who immediately notified the master and then gave the alarm. This alarm was responded to by the crews of the ship Jupiter, the S. S. Hornelen, and the employés of the Pacific Creosoting Company, who brought with them several chemical fire extinguishers. The master went below through the lazarette and saw the reflection of the fire over the top of the bulkhead between the after 'tween-decks and the lazarette. The after 'tween-decks were still full of cargo. After considerable trouble the fire was extinguished, and it was then discovered that the aforesaid bulkhead, together with the door thereof (the bulkhead was built in the vessel), and the dunnage in the after 'tween-decks, were burned, and some of the ship's stores in the lazarette were damaged by water and chemicals. The origin of the fire was not discovered."

In their argument in support of exceptions to the libel, proctors for the respondent urge that the libelant's claim is based upon a bare technicality. If so, the claim is nevertheless the assertion of a substantial and legal right. By the contract insurance was paid for and written, the "F. P. A. clause" makes an exception to the liability of the

insurer and is to be construed strictly. 19 Am. & Eng. Enc. of Law (2d Ed.) 1065; Canton Insurance Office v. Woodside, 90 Fed. 301, 33 C. C. A. 63.

The proctors on both sides of the case have informed the court that after diligent search they have been unable to find any adjudicated case, English or American, giving an interpretation of the "F. P. A. clause," since the words "on fire" came into use as a substitute for the word "burnt" in the forms of policy used previous to the decision in the Glenlivet Case, 7 Aspinwall, Mar. Cases (N. S.) 342, 395; 19 Am. & Eng. Enc. of Law (2d Ed.) 1070. The words "on fire" are not synonymous with the word "burnt," and the change of phraseology, manifestly, was not made without a purpose. Having no precedent to follow, this case must be decided according to reason and good sense.

The words "on fire," in connection with a ship, do not comprehend, necessarily, every fire that may be on board of the ship, nor do they have the same meaning as "consumed by fire" or "destroyed by burning." They are indicative of a happening whereby the ship is endangered by actual fire burning some part of it, and necessitating extraordinary efforts to prevent serious damage. A bulkhead between decks is part of a ship, as an inner partition wall is part of a house. A fire in that part of a ship would justify an alarm, and, if not promptly subdued, would certainly be destructive, and such a happening would be truthfully described by saying that the ship was "on fire."

It is the opinion of the court that the libel tenders an issue as to whether the ship was in fact on fire within the meaning of the clause of the policy relied upon to exempt the respondent from liability. Therefore the exceptions must be overruled.